# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

|  |  |  |
|---|---|---|
| **DYANIE BERMEO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:23cv00041** |
| | ) | |
| **BLAKE ANDIS, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Sheriff Blake Andis ("Sheriff Andis"), Jamie Blevins ("Blevins"), Scott Adkins ("Adkins"), and Brad Roop ("Roop") (collectively "Defendants"), by counsel, submit this memorandum of law in support of their Motion to Dismiss.

### STATEMENT OF THE CASE

Dyanie Bermeo ("Bermeo") originally filed this action in the United States District Court for the Western District of North Carolina. Defendants, current and former employees of the Washington County Sheriff's Office ("WCSO") moved to dismiss the case for lack of personal jurisdiction, and the Court allowed Bermeo to conduct jurisdictional discovery. After completing jurisdictional discovery, Bermeo voluntarily dismissed her claims against Scott Snapp ("Snapp"),[1] and Defendants renewed their motion to dismiss for lack of personal jurisdiction. After reviewing the parties' briefs on the renewed motion to dismiss, the United States District Court for the Western District of North Carolina *sua sponte* transferred venue to this Court because "venue [was] so obviously improper" in the Western District of North Carolina and denied Defendants' motion without prejudice. ECF No. 39, *1 n.1.

---

[1] Though no longer a party, Snapp was, and continues to be, represented by undersigned counsel.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

<u>S</u><u>TATEMENT OF</u> <u>*A*</u>*LLEGED* <u>F</u><u>ACTS</u>

In September 2020, Bermeo claims she was stopped in Abingdon, Virginia, by an unmarked vehicle with blue flashing lights. ECF No. 4, ¶ 26. Bermeo claims a man exited the unmarked vehicle, approached her vehicle, and asked her to step out of her car. Id. ¶¶ 28–29. The man then "proceeded to pat Plaintiff down, touching Plaintiff's breasts and fondling her vagina." Id., ¶ 29. He then returned to his vehicle and sped away. Id.

The next day, Bermeo reported the incident to the WCSO. Id., ¶ 32. Later that afternoon, Adkins contacted Bermeo and requested she come to the sheriff's office for an interview. Id., ¶ 34. Bermeo agreed and participated in an interview with Blevins, Snapp, and Adkins. Id., ¶ 35. Thereafter, Adkins conducted an investigation of Bermeo's allegations. Id., ¶¶ 42–44, 47, 49, 5–52. He surveilled a potential suspect's home with another WCSO detective. Id., ¶43.  He also visited three gas stations, a car dealership, and a residential home in the vicinity of the alleged assault to obtain security camera footage. Id. Adkins was able to obtain camera footage from one of the gas stations, and the security technician at the car dealership reported to Adkins that footage from the dealership's cameras showed Bermeo's vehicle but no other vehicle following her. Id., ¶ 47. Adkins also obtained video footage from a residence, but according to Bermeo, "the video's metadata showed that it was the wrong date and time." Id., ¶ 49.[2]

After finishing his investigation, Adkins consulted with Roop and asked Bermeo to come back to the sheriff's office for another meeting. Id., ¶ 57. Bermeo agreed to meet with Adkins and Roop and agreed to visit the scene of the alleged assault. Id., ¶ 58. While visiting the scene, Adkins and Roop perceived Bermeo's body language and breathing patterns to be


FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[2]  Bermeo does not allege that Adkins ***knew*** the metadata for this footage allegedly was for the wrong date and time.

suspicious. Id., ¶ 60. Coupled with the lack of evidence supporting her allegations, Bermeo became a suspect for making a false report. Id., ¶ 61.

After Bermeo returned to her college campus, she received some disturbing text messages from an unknown number and contacted Adkins. Id., ¶¶ 63–66. When Bermeo's father tried calling the unknown number, Bermeo's phone rang. Id., ¶ 65. Adkins and Roop went to Bermeo's campus and questioned Bermeo. Id., ¶¶ 67–68. The officers recorded the conversation with Bermeo. Id., ¶ 67.[3] Adkins told Bermeo that there was an application that could be installed on her phone that would allow a person to send herself text messages that appeared to come from another phone number. Id., ¶ 69. Adkins also told Bermeo that they could "dump" her phone to find the originating device of the text messages. Id.

Roop then told Bermeo that the surveillance footage from the night of the alleged assault showed her vehicle but no other vehicle behind her. Id., ¶ 72. Roop then said to Bermeo, ". . . we need you to tell us the truth . . . no stop happened here." Id., ¶ 74. Bermeo agreed. Id., ¶ 75. Roop asked Bermeo why she made up the story about the alleged assault. Id., ¶ 76. Instead of declining that she made the story up, Bermeo said, "I don't know." Id. Roop then asked Bermeo how she sent the text messages to herself. Id., ¶ 78. Instead of denying that she sent the text messages to herself, Bermeo replied, "there's an app." Id.

During that meeting, Bermeo admitted that she sent the text messages to herself and made up the claim about the sexual assault. Id., ¶¶ 74–76, 78. Roop and Adkins reported Bermeo's confession to campus police. Id., ¶ 80.

---

[3] Bermeo purports to quote extensively from the recorded conversation and summarizes other parts of it. Bermeo also submitted portions of a purported transcript of the recording to the Court. ECRF No. 34-4. As such, the recording is being provided to the Court for consideration. See **Ex. A**; n.3 *infra*.

The next day, Adkins asked Bermeo to come back to the sheriff's office, and when she arrived, Adkins "arrested" Bermeo. Id., ¶ 83. Adkins allegedly told Bermeo he arrested her at the direction of Sheriff Andis. Id., ¶ 84.

The next day "Defendants" created a Facebook post using a photo of Bermeo and disclosing her name, university, and city of residence. ECF No. 4-1. The post stated that "After a thorough investigation and evidence gathered because of [Bermeo's] report, it was determined that this incident lacked validity and appeared to be fabricated. When confronted with the evidence gathered by Washington County Detectives Adkins and Roop, Bermeo admitted that she had fabricated the entire story." Id.

Bermeo went to trial and was found guilty of making a false report to law enforcement, a Class 1 misdemeanor under Virginia law. ECF No. 4, ¶¶ 83, 96. Bermeo appealed her conviction and was acquitted. Id., ¶ 97.

**ARGUMENT & AUTHORITY**

**I.  Standard of Review**

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content in a complaint that "allows the



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.[4]

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," ACA Financial Guaranty Corp. v. City of Buena Vista, 298 F. Supp. 3d 834, 855 (W.D. Va. 2018), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." ACA Fin. Guar. Corp., 917 F.3d at 212 (internal quotations omitted).

## II. **Shotgun Pleading**

When a Complaint contains allegations against several entities or individuals but fails "'to specify which Defendant allegedly took what action(s)," the Complaint is deficient as a matter of law. Kincaid v. Anderson, No. 1:14cv27, 2015 WL 2106309, 2015 U.S. Dist. LEXIS 59128, at *10 (W.D. Va. May 6, 2015) (quoting Snipes v. Alamance Cnty. Clerk of Courts, No. 1:11cv1137, 2013 U.S. Dist. LEXIS 128694, 2013 WL 4833021, at *4 (M.D.N.C. Sept. 10,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[4]  The court may also "take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss 'so long as they are integral to the complaint and authentic'" without converting a motion to dismiss into one for summary judgment. Parker v. Austin, 105 F. Supp. 3d 592, 596 n.2 (W.D. Va. 2015) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). This includes newspaper articles that "discuss the subject matter of the case." Gilmore v. Jones, 370 F. Supp. 3d 630, 668 n.41 (W.D. Va. 2019) (quoting AdvanFort Co. v. Int'l Registries, Inc., No. 1:15cv220, 2015 U.S. Dist. LEXIS 62125, 2015 WL 2238076, at *10 n.10 (E.D. Va. May 12, 2015)).

629.0459\NHS
4878-9096-6156 .v4

2013)). A plaintiff simply cannot state a claim for relief by failing "to name which Defendant or Defendants are allegedly liable, instead impermissibly lumping them together as 'defendants.'" <u>R.S. v. Bd. of Dirs. Of Woods Charter Sch. Co.</u>, No. 1:16cv119, 2018 WL 339944, 2018 U.S. Dist. LEXIS 3378, at *8 (M.D.N.C. Jan. 9, 2018). Indeed, the practice of making general references to "Defendants" in a Complaint violates the notice pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure. <u>Bryant v. Wells Fargo Bank, Nat'l Ass'n</u>, 861 F. Supp. 2d 646, 660, 2012 WL 928435, 2012 U.S. Dist. LEXIS 38102 (E.D.N.C. Jan. 24, 2012), <u>adopted by</u>, 2012 U.S. Dist. LEXIS 36686 (Mar. 19, 2012).

The Amended Complaint generally references "Defendants" numerous times without identifying any of the individual defendants or the specific actions attributed to each defendant. <u>See</u> ECF No. 4, *16, *18, *23–26, *30–33. Such style of pleading is impermissible under <u>Iqbal</u> and <u>Twombly</u>. Accordingly, to the extent Bermeo intends to rely on vague allegations against the Defendants collectively without identifying which Defendant allegedly committed which act or omission, she fails to state a claim for relief.

## III. Federal Claims

42 U.S.C. § 1983 provides a cause of action "'against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States.'" <u>Hensley v. Price</u>, 876 F.3d 573, 580 (4th Cir. 2017) (quoting <u>Cooper v. Sheehan</u>, 735 F.3d 153, 158 (4th Cir. 2013)). Bermeo asserts the following claims pursuant to 42 U.S.C. § 1983:



    ➤  Fourth Amendment – Unlawful Seizure (Andis and Adkins)

    ➤  Fourth Amendment – Malicious Prosecution (Andis and Adkins)

    ➤  Fifth Amendment – Self Incrimination (Adkins and Roop)

    ➤  Fourteenth Amendment – Due Process (All Defendants)

➢ Fourteenth Amendment – Equal Protection (All Defendants)

➢ Failure to Intervene (All Defendants)

➢ Failure to Supervise (Andis)

➢ Failure to Train (Andis)

➢ Civil Rights Conspiracy (All Defendants)

**a. Unlawful Seizure (Count I – Andis and Adkins)**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. But "[t]he Constitution does not guarantee only the guilty will be arrested." Myers v. Shaver, 245 F. Supp. 2d 805, 813 (W.D. Va. 2003) (citing Baker v. McCollan, 443 U.S. 137, 145 (1979)). With certain exceptions, "the Fourth Amendment requires a warrant and probable cause before the government may conduct a particular search or seizure . . . ." County of Allegheny v. Am. Civil Liberties Union, Greater Pittsburgh Chapter, 492 U.S. 573, 606 (1989). To demonstrate a Fourth Amendment violation, a plaintiff must allege facts showing that the defendant seized the plaintiff pursuant to legal process that was not supported by probable cause due to the defendant's false statements or omissions that were "both [i] material, that is necessary to the finding of probable cause, and [ii] made deliberately or with reckless disregard for the truth." Norton v. Tabron, 727 F. App'x 762, 764–65 (4th Cir. 2018) (citation omitted).

Bermeo does not allege that Andis seized her or that Andis made false representations in support of securing the arrest warrant for Bermeo. She alleges only that Adkins told her that Andis told Adkins to charge her. That is not a seizure for purposes of the Fourth Amendment. Myers v. Shaver, 245 F. Supp. 2d 805, 812 (W.D. Va. 2003) ("Fourth Amendment seizure is a discrete event, effected with force or the threat of it.").



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

Further, while Bermeo claims Adkins "made false statements and omitted material facts" from his investigation report, she does not allege that Adkins made false statements or omissions to the magistrate that authorized the arrest warrant for Bermeo. And Bermeo's allegation that no reasonable officer would believe that Bermeo falsely reported the sexual assault based on her recantation is wholly conclusory. Rather, the facts alleged are that Adkins personally reviewed surveillance footage, confirmed with the car dealership's security staff that the dealership's security footage showed no traffic stop or vehicle following Bermeo's, and personally heard Bermeo (1) agree that the stop did not happen; (2) that she did not know why she made up the story about the stop; and (3) that there was an "app" to send herself the disturbing text messages. As addressed in section III.b. below, this was more than sufficient to support a finding of probable cause. Finally, Bermeo was convicted in General District Court, a finding of guilt beyond a reasonable doubt. As such, Bermeo's unlawful seizure claim fails as a matter of law.

**b.  Malicious Prosecution (Count II – Andis and Adkins)**

A claim for malicious prosecution pursuant to 42 U.S.C. § 1983 "'is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" <u>Hupp v. Cook</u>, 931 F.3d 307, 323–24 (4th Cir. 2019) (quoting <u>Evans v. Chalmers</u>, 703 F.3d 636, 646 (4th Cir. 2012)).  To state such a claim, the plaintiff must allege that "the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in [the] plaintiff's favor." <u>Humbert v. Mayor & City Council of Baltimore City</u>, 866 F.3d 546, 555 (4th Cir. 2017).



629.0459\NHS
4878-9096-6156 .v4

"In the context of a malicious prosecution action, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Hamden v. Denny, No. 7:20cv236, 2022 WL 824852, 2022 U.S. Dist. LEXIS 48533, *18–19 (W.D. Va. Mar. 18, 2022) (internal quotations and citation omitted). This determination hinges on "the time the defendant took the action initiating the criminal charge." Id., at *19.

"'Probable cause is determined by a totality-of-the-circumstances approach.'" Hupp, 931 F.3d at 318 (quoting Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017)). Even "seemingly innocent activity may provide a basis for finding probable cause." Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998) (internal quotations and citation omitted). Probable cause does not require sufficient evidence to secure a conviction; there only need be "sufficient evidence on which a reasonable officer at the time could have believed that probable cause existed for the arrest." Hupp, 931 F.3d at 318 (citation omitted). Pertinent here, "[i]n malicious prosecution . . . a record of conviction in a lower court is competent to show probable cause." Montgomery Ward & Co. v. Wickline, 188 Va. 485, 491 (1948); Rickets v. J.G. McCrory Co., 138 Va. 548, 554 (1924).

Bermeo's malicious prosecution (and unlawful seizure) claim fails as to the probable cause element for two reasons. First, she admits in her Amended Complaint that she agreed with the officers that the alleged traffic stop did not happen, that she did not know why she made up the story, and that that she used an app to send herself the disturbing text messages. Those admissions coupled with the lack of any security footage showing a traffic stop or another car following Bermeo's on the night of the alleged assault are sufficient for a reasonable officer to believe that probable cause exists for a charge of false reporting. See



629.0459\NHS
4878-9096-6156 .v4

Lewis v. Kei, 281 Va. 715, 724 (2011) (law enforcement may rely on statements of eyewitnesses).

Second, Bermeo was convicted in the Washington County General District Court and fails to allege any facts suggesting that conviction was "'procured by the defendant through fraud or by means of evidence which he knew to be false.'" Janney v. Arlan's Dep't Store, 247 F. Supp. 306, 308 (W.D. Va. 1965) (quoting Ricketts, 138 Va. at 554). And finally, although Bermeo was acquitted in the Circuit Court for Washington County, she was convicted in the General District Court, which is "competent to show probable cause." Montgomery Ward, 188 Va. at 491.

Therefore, Bermeo fails to state a claim for relief for malicious prosecution.

### c. Self-Incrimination (Count III – Adkins and Roop)

Bermeo claims Adkins and Roop violated her Fifth Amendment right against self-incrimination. A defendant's alleged violation of a plaintiff's rights under Miranda v. Arizona, 384 U.S. 436 (1966), however, does not give rise to a cause of action that may be pursued under 42 U.S.C. § 1983. Vega v. Tekoh, 142 S. Ct. 2095 (2022) (6-3).

The Fifth Amendment to the United States Constitution provides that no one "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. But it has long been held that the "privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental *trial* right of criminal defendants." United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (19990) (citation omitted) (emphasis added). "Regardless of any conduct taken by law enforcement officials *prior to trial* that may impair that right, 'a Fifth Amendment constitutional violation occurs *only at trial*.'" Smith v. Sch. Bd., No. 2:21cv138,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

2021 WL 5163312, 2021 U.S. Dist. LEXIS 214800, *56 (E.D. Va. Nov. 5, 2021) (quoting Verdugo-Urquidez, 494 U.S. at 264) (emphasis added).

Last summer, in Vega, the Supreme Court addressed "whether a plaintiff may sue a police officer under Rev. Stat. § 1979, 42 U.S.C. § 1983, based on the allegedly improper admission of an 'un-*Mirandized*' statement in a criminal prosecution." Vega, 142 S. Ct. at 2099. In Vega, the plaintiff was a nursing assistant, and a patient accused him of sexually assaulting her. Id. A sheriff's deputy questioned the plaintiff without giving a Miranda warning, and the plaintiff "eventually provided a written statement apologizing for inappropriately touching the patient's genitals." Id. The deputy allegedly used "coercive investigatory techniques to extract the statement . . . ." Id. The plaintiff was arrested and charged with unlawful sexual penetration, the plaintiff's request to exclude his written confession from evidence was twice denied. Id. at 2100. The plaintiff's first criminal trial resulted in a mistrial, and the plaintiff was acquitted after a second trial. Id. The plaintiff then sued the investigating deputy and others, alleging the deputy violated the plaintiff's Fifth Amendment right against self-incrimination. Id.

The civil case proceeded to a jury trial, resulting in a defense verdict, and on appeal, the United States Court of Appeals for the Ninth Circuit remanded the case for a new trial, finding that the plaintiff had established a violation of his Fifth Amendment right by showing that the deputy violated Miranda. Id. The Supreme Court granted the deputy's petition for a writ of certiorari, and reversed the decision of the Ninth Circuit. Id. at 2101–02. Ultimately, the Vega Court concluded that a violation of Miranda rules does not provide a basis for a claim under 42 U.S.C. § 1983. Id. at 2102. Writing for the Vega Court majority, Justice Alito observed "[t]hat [the] prophylactic purpose [of Miranda] is served by the suppression *at trial* of statements



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

obtained in violation of <u>Miranda</u> and by the application of that decision in other recognized contexts. Allowing a victim of a <u>Miranda</u> violation to sue a police officer for damages under §1983 would have little additional deterrent value, and permitting such claims would cause many problems." <u>Id.</u> at 2107 (emphasis added).

Indeed, allowing such claims would "disserve judicial economy" and create potential conflicts in factual and legal findings between federal and state courts. <u>Id.</u> (internal quotations and citations omitted). Additionally, allowing such claims would raise "many procedural issues" regarding deference to a lower court's factual findings, the application of forfeiture and plain error rules, and whether "civil damages are available in instances where the unwarned statements had no impact on the outcome of the criminal case." <u>Id.</u> Accordingly, the <u>Vega</u> Court saw "no justification for expanding <u>Miranda</u> to confer a right to sue under §1983 . . . ." <u>Id.</u> at 2108.

Here, the <u>Vega</u> Court's decision is dispositive and requires dismissal of Count III.

**d. Due Process – Liberty Interest (Count IV – All Defendants)**

As set forth above, malicious prosecution is "properly understood as a Fourth Amendment claim . . . ." <u>Hupp</u>, 931 F.3d at 323–24. Where "an explicit textual source of constitutional protection exists," <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989), the claim must be "analyzed under the standard appropriate to that specific provision, not under the rubric of . . . due process," <u>Parker v. Austin</u>, 105 F. Supp. 3d 592, 598 (W.D. Va. 2015) (internal quotations omitted).

The Fourth Amendment governs allegations of false arrest, malicious prosecution, and unlawful seizure, not the procedural and due process components of the Fourteenth Amendment. <u>Emesowum v. Arlington Cnty.</u>, No. 1:20cv113, 2020 WL 3050377, 2020 U.S.



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

Dist. LEXIS 99701, *11 (E.D. Va. June 5, 2020). "Consequently, the Fourth Amendment, and not the more generalized notion of due process in the Fourteenth Amendment, provides the actionable ground for relief where, as here, a police officer is alleged to have arrested plaintiff falsely, maliciously prosecuted plaintiff, and unlawfully seized plaintiff and plaintiff's property." Id. Therefore, "the Fourteenth Amendment provides no alternative basis for" a malicious prosecution or unlawful seizure claim. Evans, 703 F.3d at 646 n.2.

Bermeo's due process claim essentially mirrors the allegations of the unlawful seizure and malicious prosecution claims. See ECF No. 4, ¶ 129. The Fourth Amendment provides an explicit textual source for such claims. Thus, Bermeo fails to state a claim for a due process violation.[5]

### e. Equal Protection (Count V – All Defendants)

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV. The guarantee is one of laws, not results. Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 273 (1979).

To state an equal protection claim under the Fourteenth Amendment, "'a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.'" Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 238 (4th Cir. 2021) (quoting Equity in Athletics, Inc. v. Dep't. of Educ., 639 F.3d 91, 108 (4th Cir. 2011)). "Allegations of a procedurally or otherwise flawed proceeding combined with a conclusory allegation of . . . discrimination is not sufficient to survive a motion to dismiss." Sheppard v. Visitors of Va.

---

[5] There are also no facts alleged regarding any individual action by Blevins or Andis to support such a claim against them.

629.0459\NHS
4878-9096-6156 .v4

State Univ., No. 3:18cv723, 2019 WL 6039953, 2019 U.S. Dist. LEXIS 198012, *12 (E.D. Va. Nov. 14, 2019) (internal quotations omitted); Gulyas v. Appalachian State Univ., No. 5:16cv225, 2017 WL 3710083, 2017 U.S. Dist. LEXIS 137868, *24–25 (W.D.N.C. Aug. 28, 2017) ("Notably, while Plaintiff's allegations may be sufficient to permit an inference that Defendant Elrod acted in a biased manner against Plaintiff, Plaintiff does not allege any facts— such as statements by Elrod or prior conduct by Elrod or App. State—that suggest that any bias . . . was attributable to Plaintiff's gender as opposed to the result of any number of possible non-protected factors . . . ."); Nofsinger v. Va. Commonwealth Univ., No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, *29–30 (E.D. Va. July 13, 2012), aff'd 2013 U.S. App. LEXIS 6579 (4th Cir. Apr. 2, 2013).

Here, Bermeo's claim fails because she does not allege any facts supporting any discriminatory animus by any of the Defendants regarding her race. The only allegation upon which she relies is the fact that the WCSO created a social media post about Bermeo's arrest but did not do so when another individual who is white was charged with the same offense arising out of similar conduct. The mere fact that Bermeo believes that race was the reason for the alleged discriminatory action, "absent more, does not suffice to render [her] claim plausible." Sheppard, 993 F.3d at 238; Tamar v. Geico Cas. Co., No. 1:10cv1067, 2011 WL 1583650, 2011 U.S. Dist. LEXIS 44221, *4 (E.D. Va. Apr. 22, 2011); Williams-Boldware v. Denton Cnty., No. 4:09cv591, 2011 WL 672776, 2011 U.S. Dist. LEXIS 16320, *11 (E.D. Tex. Jan. 25, 2011), adopted 2011 U.S. Dist. LEXIS 16019 (E.D. Tex. Feb. 16, 2011). Because Bermeo offers only conclusory allegations of discriminatory animus based on race, she fails to state an equal protection claim.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

**f.  Failure to Intervene (Count VI – All Defendants)**

The Eighth Amendment to the United States Constitution instills an obligation on a law enforcement officer to intervene if another officer is violating an individual's constitutional rights. Shahaddah v. Gotcher, No. 1:18cv883, 2019 WL 2518128, 2019 U.S. Dist. LEXIS 102027, at *17 (E.D. Va. June 17, 2019). Also known as "bystander liability," the claim requires the plaintiff to establish that he suffered a sufficiently serious injury and that the defendant was deliberately indifferent. Id. (citing Brown v. North Carolina Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010)). Thus, an officer may be liable if he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., 302 F.3d 188, 204 (4th Cir. 2002).

Because the claim is derivative in nature, however, the officer witnessing the conduct 'cannot be held liable under bystander liability for a failure to intervene'" absent a constitutional violation by another officer. Void v. Large, No. 7:16cv64, 2018 WL 1474550, 2018 U.S. Dist. LEXIS 48970, at *11 (W.D. Va. Mar. 26, 2018) (quoting Howie v. Prince George's Cnty., No. DKC 2006-3465, 2009 U.S. Dist. LEXIS 68274, at *17–18, 2009 WL 2426018, at *6 (D. Md. Aug. 5, 2009)).

Here, there are no facts to support an underlying constitutional violation. Therefore, any bystander liability claim fails as a matter of law. Specifically as to Blevins and Andis, there are no allegations that either had knowledge of any constitutional violation or was in a position to intervene in any alleged constitutional violation. Accordingly, Bermeo fails to state a claim for failure to intervene.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

g. **Failure to Supervise (Count VII – Andis)**

"To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Individual liability under § 1983, however, requires an affirmative showing "'that the official charged acted personally in the deprivation of the plaintiff's rights.'" Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (quoting Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977)); Cook v. James, 100 F. App'x 178, 180 (4th Cir. 2004) (citing Wright, 766 F.2d at 850)). "The doctrine of *respondeat superior* has no application under [42 U.S.C. § 1983.]" Wright, 766 F.2d at 850 (internal quotations omitted). Rather, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676.

A supervisor may be held liable for the constitutional violations of his subordinates only when the following three elements are established: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotations and citations omitted); see also Woodfolk v. Cent. Va. Reg'l Jail Auth., No. 7:22cv522, 2023 WL 3395090, 2023 U.S. Dist. LEXIS 82934, *3 (W.D. Va. May 11, 2023). Of course, there must be an underlying constitutional violation to support a supervisory liability



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

claim. <u>Doe v. Rosa</u>, 664 F. App'x 301, 303 n.2 (4th Cir. 2016) (citing <u>Temkin v. Frederick Cnty. Comm'rs.</u>, 945 F.2d 716, 724 (4th Cir. 1991)).

As set forth above, Bermeo fails to allege an underlying constitutional violation. Therefore, this claim fails. But going further, Bermeo does not allege any facts regarding Andis other than that Adkins allegedly told Bermeo that Andis directed Adkins to charge Bermeo. There are no allegations that Andis was aware of any alleged risk of constitutional injury or that he had any awareness of the "alleged offensive practices" of which Bermeo complains. Accordingly, Bermeo fails to state a claim for failure to supervise.

### h. Failure to Train (Count VIII – Andis)

"[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." <u>Connick v. Thompson</u>, 563 U.S. 51, 61 (2011). To state such a claim, there must be factual allegations of "deliberate indifference" showing that the alleged failure to train was the "moving force behind the [alleged] constitutional violation." <u>City of Canton v. Harris</u>, 489 U.S. 378, 388–89 (1989). There also must be an underlying constitutional violation by an untrained employee. <u>Scarborough v. Frederick Cnty. Sch. Bd.</u>, 517 F. Supp. 3d 569, 584 (W.D. Va. 2021) (citations omitted). Bermeo pleads no such facts, and there is "no reason to suspect that any possible violations that occurred here were more likely the result of inadequate training than the result of independent decisions" of another defendant. <u>Cadmus v. Frederick Cnty. Sheriff's Office</u>, No. 5:15cv53, 2016 U.S. Dist. LEXIS 103057 *27 (W.D. Va. Aug. 5, 2016), <u>adopted</u>, 2016 U.S. Dist. LEXIS 127988 (W.D. Va. Sept. 20, 2016). Accordingly, Bermeo fails to state a claim for failure to train against Andis.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

i.   **Conspiracy to Violate Constitutional Rights (Count IX – All Defendants)**

Bermeo asserts her civil rights conspiracy claim pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.[6]

A civil conspiracy under 42 U.S.C. § 1983 is an independent source of liability. Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). "To establish conspiracy under 42 U.S.C. § 1983, the plaintiff must show that the defendants acted 'jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in . . . deprivation of a constitutional right.'" Chavez v. McIntyre, 424 F. Supp. 2d 858, 861 (W.D. Va. 2006) (quoting Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996)). "[A] plaintiff must show . . . that the defendants 'reached an understanding to violate [the plaintiff's] rights.'" Smalls v. Binner, No. 4:15cv17, 2015 U.S. Dist. LEXIS 104433, 2015 WL 4727203, *4 (W.D. Va. Aug. 10, 2015) (quoting Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002)). Because a "meeting of the minds" represents a critical element of a conspiracy, there must be "facts from which a conspiratorial agreement can be inferred." Wiggins v. 11 Kew Garden Court, 497 F. App'x. 262, 264 (4th Cir. 2012) (citing Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010)).

42 U.S.C. § 1985(3) provides a cause of action for conspiracy to deny equal protection of the laws. Abdelhalim v. Lewis, No. 1:19cv858, 2020 WL 3271378, 2020 U.S. Dist. LEXIS 106488, *29 (E.D. Va. June 17, 2020). In order to state such a claim, a plaintiff must allege the following:

> "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of equal enjoyment of rights secured by the law to all, (4) and which results in

---

[6]  Based on her equal protection claim, Defendants presume Bermeo's claim under § 1985 falls under section (3) of that statute.

629.0459\NHS
4878-9096-6156 .v4

injury to the plaintiff as (5) a consequence of an overt act committed by the
defendants in connection with the conspiracy."

A Soc'y Without a Name, for People Without a Home, Millennium Future-Present v. Virginia,
655 F.3d 342, 346 (4th Cir. 2011) (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir.
1995)). There must be an "'agreement or a meeting of the minds by the defendants to violate the
plaintiff's constitutional rights.'" Id. (quoting Simmons, 47 F.3d at 1377).

A mere conclusory allegation of a conspiracy with no factual allegations to support it
must be rejected by the court. Id. (citing Simmons, 47 F.3d at 1377). "Further, in order to state
a § 1985 conspiracy claim, Plaintiff must [allege] that the co-conspirators were each motivated
by a specific class-based, invidiously discriminatory animus." Abdelhalim, 2020 U.S. Dist.
LEXIS 106488, *30.

First, as set forth above, Bermeo fails to state a claim for a violation of her civil rights.
Thus, without any underlying constitutional violation, her conspiracy claim cannot proceed.
Second, as regards Blevins and Andis, there are zero allegations to support a "meeting of the
minds" to violate Bermeo's rights. Third, as to Roop and Adkins, while there are allegations
that Adkins and Roop agreed that Bermeo eventually became a "suspect of false reporting,"
there are no allegations that Adkins and Roop reached a meeting of the minds to violate
Bermeo's civil rights. And to the extent that Bermeo seeks to assert a conspiracy claim
pursuant to 42 U.S.C. § 1985(3), for the same reason her equal protection claim fails, her
conspiracy claim fails because there are no factual allegations that any defendant was
motivated by a "class-based, invidiously discriminatory animus."

**j.  Qualified Immunity**

Qualified immunity serves the dual purpose of holding "'public officials accountable
when they exercise power irresponsibly and . . . shield[ing] officials from harassment,



distraction, and liability when they perform their duties reasonably.'" <u>Danser v. Stansberry</u>, 772 F.3d 340, 345 (4th Cir. 2014) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)). The defense applies so long as the defendant's conduct does not violate a clearly established right of which a reasonable person would have known. <u>Id.</u> (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Because qualified immunity provides "'immunity from suit rather than a mere defense to liability,'" it is imperative that a ruling on the issue "be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).

When a defendant asserts a qualified immunity defense, the court must conduct a two-pronged analysis which addresses (1) whether the defendant violated the plaintiff's constitutional rights; and (2) if so, whether at the time of the alleged violation the right was clearly established. <u>Danser</u>, 772 F.3d at 345–46 (citing <u>Meyers v. Baltimore Cnty., Md.</u>, 713 F.3d 723, 731 (4th Cir. 2013)). The Court may address either prong first in its qualified immunity analysis. <u>Hensley v. Price</u>, 876 F.3d 573, 580 (4th Cir. 2014) (citing <u>Pearson</u>, 555 U.S. at 236).

The second element of the qualified immunity analysis requires the court to determine, without the benefit of hindsight, whether "'the contours of the right [were] sufficiently clear [such] that a reasonable [official] would understand that what he is doing violates that right.'" <u>E.W. v. Dolgos</u>, 884 F.3d 172, 185 (4th Cir. 2018) (quoting <u>Hill v. Crum</u>, 727 F.3d 312, 321 (4th Cir. 2013)). Indeed, the question is not whether the official's actions were correct but, rather, whether those actions were reasonable under the circumstances. <u>Brown v. Ray</u>, 695 F. Supp. 2d 292, 304 (W.D. Va. 2010)



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0459\NHS
4878-9096-6156 .v4

In the Fourth Circuit, whether a right is clearly established hinges on "'the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Owens v. Lott, 372 F.3d 267, 279–80 (4th Cir. 2004) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)). While not conclusive, "'[i]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)).

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam) (quoting Ashcroft, 563 U.S. at 742). Thus, before holding a government officer liable for breaching a clearly established right, the Court must "identify a case where [a defendant] acting under similar circumstances . . . was held to have violated" the plaintiff's rights. Id. This analysis does not require that the "'exact conduct at issue' . . . previously have been deemed unlawful for the law governing [a defendant's] action to be clearly established." Sims v. Labowitz, 885 F.3d 254, 263 (4th Cir. 2018) (quoting Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001)). But there must be clearly established law that is "particularized to the facts of the case' so as to avoid transforming qualified immunity into 'a rule of virtually unqualified immunity." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (internal quotations omitted).

For purposes of the qualified immunity defense at this stage of the proceeding, it was not clearly established that (1) issuing a summons in lieu of physical restraint could support a "seizure" for purposes of a Fourth Amendment claim, (2) a malisious prosecution claim could lie when the plaintiff was convicted in one court but acquitted on appeal; and (3) a person's

- 21 -

Fifth Amendment right against self-incrimination extended outside the context of courtroom proceedings. Therefore, even at this stage those claims are barred by qualified immunity.

## IV. <u>State Law Claims</u>

### a. Choice of Law

Because the claims against Defendants are before the Court pursuant to its supplemental jurisdiction, 28 U.S.C. § 1367, the Court must apply the substantive law and choice-of-law rules of the forum state, Virginia. <u>See</u> <u>Hegedus v. Nationstar Mortg. LLC</u>, No. 5:17cv53, 2018 U.S. Dist. LEXIS 16085 (W.D. Va. Feb. 1, 2018) <u>adopted by</u>, 2018 WL 1461747, 2018 U.S. Dist. LEXIS 48682 (W.D. Va. Mar. 23, 2018) Here, the tortious acts allegedly occurred in Virginia, and the alleged harm occurred in Virginia. Therefore, Virginia law applies. <u>Gilmore v. Jones</u>, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019); <u>Frye v. Commonwealth</u>, 231 Va. 370, 376, 345 S.E.2d 267, 272 (1986).

### b. Invasion of Privacy / Intrusion into Seclusion (Count X - All Defendants)

Virginia does not recognize a claim for invasion of privacy by intrusion into seclusion. As the Supreme Court of Virginia noted in <u>Wjla-Tv v. Levin</u>:

> The common law torts of invasion of privacy are (1) unreasonable intrusion upon the plaintiff's seclusion, or solitude, or into his private affairs; (2) public disclosure of true, embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) misappropriation of plaintiff's name or likeness for commercial purposes. William L. Prosser, <u>The Law of Torts</u> § 117 (4th ed. 1971). By codifying only the last of these torts, the General Assembly has implicitly excluded the remaining three as actionable torts in Virginia. <u>See</u> <u>Falwell v. Penthouse</u>, 521 F. Supp. 1204, 1206 (W.D. Va. 1981). Accordingly, we agree with WJLA and the *amici curiae* that, to the extent that count five asserts a claim for false light publicity, it fails to state a proper cause of action. Rather, in Virginia where, as here, a plaintiff alleges that the defendant made an unauthorized use of the plaintiff's name or image in a context that is false and would be highly offensive to a reasonable person, his remedy is to prove that the context was defamatory, and not that the use was a misappropriation. *Cf.* Rodney A. Smolla, 2 <u>Law of Defamation</u>, § 10:10 (2d ed. 2000) (contrasting the elements of privacy torts and defamation).



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 22 -

264 Va. 140, 160 n.5 (2002); <u>see also</u> <u>Rutledge v. Town of Chatham</u>, No. 4:10cv35, 2010 WL 4791840, 2010 U.S. Dist. LEXIS 122273, *24 (W.D. Va. Nov. 18, 2010) ("Virginia has no common law cause of action for invasion of the right to privacy").

Accordingly, Bermeo fails to state a claim for "Invasion of Privacy Based on Intrusion into Seclusion."

### c.   Intentional Infliction of Emotional Distress (Count XI – All Defendants)

In Virginia, intentional infliction of emotional distress ("IIED") claims are disfavored. <u>Marcantonio v. Dudzinski</u>, 155 F. Supp. 3d 619, 632 (W.D. Va. 2015) (collecting cases). An IIED claim requires proof of the following elements by clear and convincing evidence: "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." <u>Parker v. Austin</u>, No. 5:14cv35, 2017 U.S. Dist. LEXIS 178795, at *9 (W.D. Va. Oct. 27, 2017) (citing <u>Supervalu, Inc. v. Johnson</u>, 276 Va. 356, 370, 666 S.E.2d 335, 343 (2008)).

The fourth element is particularly difficult to establish. <u>See</u> <u>Harris v. Kreutzer</u>, 271 Va. 188, 205, 624 S.E.2d 24, 34 (Va. 2006) (allegations of "nightmares, difficulty sleeping, extreme loss of self-esteem and depression" and subsequent counseling, mortification, humiliation, shame, disgrace, and injury to reputation did not state a claim); <u>Dixon v. Denny's, Inc.</u>, 957 F. Supp. 792, 796 (E.D. Va. 1996) (feeling "fearful and degraded" and suffering "headaches and vomiting" does not satisfy fourth element); <u>Russo v. White</u>, 241 Va. 23, 400 S.E.2d 160, 163 (1991) (complaints of nervousness, sleep deprivation, stress and "its physical symptoms," withdrawal from activities, and the inability to concentrate at work were insufficient).



Finally, "the initiation of criminal proceedings when there is probable cause to do so cannot constitute the intentional infliction of emotional distress." <u>Eaton v. Paramount Parks</u>, No. 96-2518, 1998 WL 163833, 1998 U.S. App. LEXIS 6786, *4 n.3 (4th Cir. Apr. 6, 1998) (per curiam) (citing <u>Lewis v. First Nat'l Bank of Stuart</u>, 645 F. Supp. 1499, 1506 (W.D. Va. 1986)).

Here, Bermeo alleges that she suffered "post-traumatic stress disorder; she has had recurrent nightmares, panic attacks, suicidal ideations, and debilitating anxiety." ECF No. 4, ¶ 102. These are the same sorts of allegations rejected by the Supreme Court of Virginia because they do not constitute sufficient injury to support an IIED claim. Further, there are no allegations as to actions by Blevins or Andis to support such a claim against them. And the allegations against Roop and Adkins do not constitute intentional, reckless, outrageous, or intolerable conduct based on the existence of probable cause by virtue of Bermeo's own allegations that led to her charges and that she was convicted in the General District Court. Therefore, Bermeo fails to state a claim for IIED.

**d. Fraud (Count XII – Adkins and Roop)**

Bermeo fails to state an actionable claim for fraud for two reasons. First, the claim is time-barred. Second, Bermeo's allegations are insufficient to meet the heightened pleading standard for a fraud claim under Virginia law.

Actions for fraud have a one-year limitation period under Virginia law. <u>J.F. Toner & Son, Inc. v. Staunton Prod. Credit Ass'n</u>, 237 Va. 155, 158 (1989). The alleged misrepresentation occurred in October 2020, Bermeo was tried and convicted in March of 2021, and Bermeo was acquitted by the Washington County Circuit Court on September 13, 2021. Thus, the absolute latest date the alleged fraud should have been discovered by the



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

exercise of due diligence was September 13, 2021. <u>See</u> Va. Code § 8.01-249(1). But Bermeo did not file this action until September 27, 2022. Accordingly, the claim is time-barred.

Bermeo also fails to allege facts supporting a claim for fraud. The elements of a cause of action for actual fraud are: (1) a false representation, (2) of material fact, (3) made intentionally or knowingly, (4) with the intent to mislead, (5) reliance by the misled party, and (6) injury resulting from the reliance. <u>Beck v. Smith</u>, 260 Va. 452, 457 (2000); <u>see also</u> <u>Sales v. Kecoughtan Hous. Co.</u>, 279 Va. 475, 481 (2010). A claim of fraud must be plead specifically and distinctly. Fed. R. Civ. P. 9(b); <u>Mortarino v. Consultant Eng'g Servs.</u>, 251 Va. 289, 295 (1996).

Here, Bermeo's claim also fails because she does not allege facts to support the conclusory allegation that Adkins and Roop "concealed a material fact by lying to Plaintiff about video evidence . . . ." Bermeo does not allege that there was any video that *did* show a traffic stop involving Bermeo or a car following her. <u>See</u> ECF No. 4, ¶¶ 71–72. Further, it belies common sense to rest a fraud claim on such allegations when Bermeo "indicat[ed] agreement" with Roop that no traffic stop occurred, told Roop she did not know why she made up the traffic stop, and told Roop there was an "app" used to send herself the disturbing text messages. These are all facts ostensibly in Bermeo's own personal knowledge: the alleged existence of a traffic stop and the fabrication of text messages. As a matter of law, there cannot be detrimental reliance by the "misled" party when the "misled" party is the one with personal knowledge of the underlying facts.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request entry of an Order dismissing this case with prejudice, striking it from the active docket of this Court, awarding Defendants



their costs and fees incurred in defending this action pursuant to 42 U.S.C. § 1988, and granting

such further relief as the Court deems just and proper.

Respectfully submitted,

BLAKE ANDIS, JAMIE BLEVINS, SCOTT
ADKINS, and BRAD ROOP

/s/_____
Nathan H. Schnetzler (VSB No. 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone:          (540) 772-4600
Fax:              (540) 772-9167
Email:          nschnetzler@faplawfirm.com
*Counsel for Blake Andis, Jamie Blevins, Scott
Adkins, and Brad Roop*



**<u>CERTIFICATE OF SERVICE</u>**

  I hereby certify that on November 8, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to counsel of record.

/s/_____
Nathan H. Schnetzler

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 27 -